PEOPLE v. DETROIT UNITED RAILWAY.

STREET RAILROADS— CROSSINGS— PROTECTION — ORDINANCES—AP-
PLICABILITY AFTER SALE OF PROPERTIES.

An ordinance requiring street-railway companies to place a
red light at the intersections of their roads with other street
railroads is binding upon a company subsequently acquir-
ing the property and franchises of two or more other
roads.

ON REHEARING.

STREET RAILROADS—CROSSINGS— PROTECTION—ORDINANCES — VIO-
LATION—PROSECUTION—EVIDENCE—SUFFICIENCY.

In a prosecution of a street-railway company for violation of
an ordinance requiring each company to cause a red light to
be placed at the crossing and intersection of other street rail-
ways at all curves of its own road, it is incumbent upon the
people to show that the tracks at the crossing in question be-
long, or formerly belonged, to separate companies.

Certiorari to the recorder's court of Detroit; Connolly,
J.  Submitted January 8, 1908.  (Docket No. 8.)  De-
cided February 15, 1908.  Reargued April 8, 1908; former
opinion vacated May 1, 1908.

The Detroit United Railway was convicted of violating
an ordinance, and sentenced to pay a fine of $25.  Re-
versed.

*Brennan, Donnolly & Van De Mark (John J. Speed,*
of counsel), for appellant.

*P. J. M. Hally (T. E. Tarsney,* of counsel), for the
people.

BLAIR, J.  The respondent appeals to this court from

a conviction in the recorder's court of the city of Detroit for an alleged violation of section 5 of a certain ordinance, adopted February 17, 1896, in that the defendant—

"Did then and there unlawfully and wilfully fail and neglect to place a red light at the crossing and intersection of the Woodward avenue street railway, so called, with the Jefferson avenue street railway, so called, at the curve of said company's road where the said street-railway lines cross and intersect, so as to give warning to motormen and citizens," etc.

The section in question reads as follows:

"It shall be the duty of drivers, motormen and conductors operating any street car in the city to make such stoppage of cars on the farther side of the street approached by such car, except where there is but one crosswalk; then said car shall be stopped so that the rear platform will be slightly over the crossing, and in approaching the crossing of any other street-railway intersection or double track curve to cause such car to come to a full stop before reaching said crossing, intersection or double track curve, and at least 20 feet therefrom.

. "It shall be the duty of each and every street-railway company operating cars in the city of Detroit to cause a red light to be placed at the crossing and intersection of other street railways at all curves of their own roads, in such a manner as to give warning to motormen and citizens. (Approved Feb. 17, 1896.)"

At the time the ordinance was passed, there were three different street railways: The Citizens' Street Railway, assignee of the Detroit City Railway and Grand River Street Railway, to whom the original franchises were granted; the Ft. Wayne & Elmwood Street Railway, and the Detroit Railway. Counsel for respondent contend that the section in question applies only to the crossings and intersections of distinct and separate railway companies and "makes no provision and has no application when the same company, as in this case, owns and operates the intersecting lines, either by straight or by curved crossings, and the court should have so ruled."

"As to the contention that the purchasing company is

not liable to be proceeded against in the same manner as its grantor was, we think it unsound. The only rights derived are by purchase, it is true, but it seems clear that such a purchasing company takes the road subject to all the obligations resting upon its grantor. See 2 Comp. Laws, § 6448." *Township of Grosse Pointe* v. *Railway,* 130 Mich. 363.

Whatever reasons existed for the imposition of the duty upon the separate street railways of causing the red lights "to be placed at the crossing and intersection of other street railways at all curves of their own roads," so far as the warning to motormen and citizens is concerned, they apply with equal force to the consolidated companies, and the judgment of the recorder's court is affirmed.

MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.

### ON REHEARING.

BLAIR, J. A rehearing was granted in this case for the reason that the court misapprehended the position of respondent and decided the case upon an understanding of the facts not supported by the record. The record does not disclose whether the intersecting lines were owned by different companies or by the same company at the time the ordinance was adopted. As the court understood the position of respondent in the original brief and as stated by the counsel who made the oral argument, it was contended that the ordinance did not apply where intersecting lines which were subject to the ordinance had been purchased and were owned by one company. This was apparently the view of the recorder's court and the theory combated by counsel for the people.

We are still of the opinion that our understanding of respondent's position was warranted by the printed brief and oral argument, but, inasmuch as the brief is open to the construction now claimed for it, and in view of the importance to the parties of a construction of the ordinance, we have concluded to dispose of the case upon the merits.

Respondent contends that, to make a case under section. 5, it was essential that the people should prove that the crossing and intersection was made by the lines of separate companies at some time during the existence of the provision, and, there being no proof to that effect, respondent's motion for judgment in its favor should have been granted.

Counsel for the people argue that the provision as to red lights applied to all intersecting tracks at curves, regardless of ownership and whether owned prior to respondent's purchase by different companies or not.

The language "to cause a red light to be placed at the crossing and intersection of *other street railways* at all curves of *their own roads*" seems designed to contrast ownership of the lines. The natural significance of the language used is that, at the intersection of street railways of others at all curves of their own roads, they shall maintain red lights.

As there was no proof that, prior to respondent's purchase, the provision in question applied to the intersecting lines by virtue of their separate ownership or management, it follows that upon this record respondent's motion was well founded and should have been granted.

Judgment reversed.

MONTGOMERY, OSTRANDER, HOOKER, MOORE, CARPENTER, and MCALVAY, JJ., concurred.